

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-05-425-CR

NIKOLAI IVANOV KARENEV                                              APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1] ON REMAND

------------

A jury convicted Appellant Nikolai Ivanov Karenev on one count of harassment. The trial court sentenced him to 120 days' confinement in Denton County Jail, probated for eighteen months, and a $500 fine. In three points, Appellant urges charge error and challenges the constitutionality of the harassment statute and the legal sufficiency of the evidence. The Texas Court

---

[1] *See* Tex. R. App. P. 47.4.

of Criminal Appeals has already held that Appellant forfeited any challenges to the statute by not raising them in the trial court.[2] Because we hold that the evidence is legally sufficient and that any charge error is harmless, we affirm the trial court's judgment.

Facts

Attorney Elena Karenev filed for divorce from Appellant in October 2004, and Appellant moved out of their residence in December 2004. Elena testified at Appellant's trial that after he moved out, he began leaving between ten and twenty voice mail messages for her a day. She testified that the messages threatened her safety and her professional reputation in the community.

Appellant had also sent Elena e-mail messages in March 2005. The email messages were written almost entirely in Bulgarian. At trial, the State introduced translations of five e-mails sent by Appellant to Elena. In the e-mails, as read in court by Elena, Appellant asked Elena, "When are you going to quit practicing black magic?" He told her, "Let me tell you what the future holds . . . . I will raise [our child] . . . . Your mother will be paralyzed. You will enter the med [sic] house, or I will send you to jail." He called her "not just a whore . . . something much scarier." In another e-mail, he wrote, "If I tell you

---

[2] _Karenev v. State_, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (_Karenev II_).

2

that you are a pathological liar, a dirty scum, . . . awful thief, . . . a dirty user, [a] sick nymphomaniac, . . . a creature of the devil, and that will be an understatement." He told her, "It is time to pay for all of the filthiness which you have caused during your pathetic life."

In March 2005, Elena reported Appellant's behavior to the police. Based on their investigation, the police obtained a warrant for Appellant's arrest. The police arrested Appellant on March 30, 2005, and Appellant was charged by information in April 2005. An amended information was filed in the trial court in October 2005. The information charged one count of harassment based on the telephone messages Appellant left for Elena and one count of harassment based on his "electronic communications" to Elena. Count two elaborates the charge based on electronic communications: "to wit: sending harassing and/or threatening e-mail to Elena" with the intent to harass, annoy, alarm, abuse, torment, or embarrass her.

Appellant was tried to a jury in October 2005. The jury charge's instruction on harassment stated that a person commits harassment if

> with intent to harass, annoy, alarm, abuse, torment or embarrass another, he (1) makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another or (2) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

3

This definition of harassment comes from the language of Texas Penal Code section 42.07(a).[3]

The charge instructed the jury to find Appellant guilty on count two if they found beyond a reasonable doubt that he had, with the requisite intent, sent Elena "electronic communications" in a manner reasonably likely to cause the intended effect, "to wit:  [sent] harassing and/or threatening e-mail to Elena" with the intent to harass, annoy, alarm, abuse, torment, or embarrass her.  That is, the application paragraph of the jury charge omitted the word "repeated" and used the term "email."

The jury acquitted Appellant on the first count of telephone harassment and found him guilty on the second count—harassment by sending repeated electronic communications.  Appellant timely appealed.

Legal Sufficiency of the Evidence

In his third point, Appellant contends that there is legally insufficient evidence to show that he intended to harass, annoy, alarm, abuse, torment, alarm, embarrass, or offend the complainant. In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational

---

[3] ... Tex. Penal Code Ann. § 42.07(a) (Vernon 2003).

4

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4]  Section 42.07(a)(7) of the Texas Penal Code provides that a person commits the offense of harassment if, with the intent to harass, annoy, alarm, abuse, torment, or embarrass another, he sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.[5]

The Texas Court of Criminal Appeals has addressed the sufficiency of evidence of intent and the question of inferring intent from the record as a whole:

> Although the intent to kill is easily inferred from pointing a gun and shooting, the intent to defraud or to affect the course of an investigation cannot necessarily be inferred from the mere making of a statement or proof of its inaccuracy.[6]

And, in the explanatory footnote, the court noted,

> In cases of forgery and fraud, it is difficult to prove intent.  This Court has wisely held that intent or guilty knowledge cannot be inferred from the mere passing of a forged instrument.  Indeed, to hold otherwise would create the danger that the unknowing and accidental passing of a forged instrument could effectively become a strict liability offense.  The issue of intent is of such overriding

---

[4] ... *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[5] ... Tex. Penal Code Ann. § 42.07(a)(7).

[6] ... *De La Paz v. State,* 279 S.W.3d 336, 349–50 (Tex. Crim. App. 2009).

importance in a case of forgery that it effectively becomes the focus of the State's case. Establishing intent in such cases is so crucial and so difficult to do that, as a practical matter, evidence of extraneous offenses is nearly always admissible. While it is hypothetically possible that a case of forgery could be established by direct evidence, such as eyewitness testimony, most cases of forgery rest on circumstantial evidence.[7]

We understand this analysis of intent to require us to view the entire record not just for evidence of acts by the parties but also for evidence of Appellant's state of mind to determine whether there is sufficient evidence in the record to support the jury's conclusion regarding his intent in sending the emails.[8] It is not sufficient that the evidence show that Elena felt harassed, annoyed, alarmed, abused, tormented, or embarrassed when she received the repeated emails; the evidence must also show beyond a reasonable doubt that Appellant sent repeated emails with the specific intent to harass, annoy, alarm, abuse, torment, or embarrass her.

The record reflects that Elena had been married twice before her marriage to Appellant. Her first husband testified that during their divorce proceedings, Elena had falsely accused him of a crime in an attempt to force a favorable property settlement. Her second husband testified that during child custody

---

[7] ... *Id.* at 350 n.46 (quoting *Parks v. State*, 746 S.W.2d 738, 740 (Tex. Crim. App. 1987)).

[8] ... *See id.* at 349–50.

litigation, Elena had tried to prosecute him for calling her house to try to talk to his daughters. The police refused to pursue the complaint. Appellant's former wife testified that Elena had filed assault charges against her and that she had been acquitted. She also testified that Elena had forged her signature on a deed and notarized it.

The State offered a series of five email messages received between March 23 and March 29, 2005, all written almost entirely in Bulgarian. The prosecution relied without objection on translations of the messages provided by Margarita Stefanova Helstrom, an acquaintance of Elena's who was not a certified translator. Helstrom testified without objection that the telephone calls and the emails were harassment.

Appellant countered Helstrom's translations with the testimony of Tatiana Vassileva Gilbard, a Bulgarian translator. She pointed out some significant omissions in the translations of the telephone calls and some errors and disagreed with Helstrom's interpretation of some of the language in the emails. But she stated that the translation of telephone calls in State's exhibit 10 was "pretty good."

In all, the State offered five emails. The first is dated March 23, 2005, and provides,

Elena,

I pray for you every day and I light up candles in the church.

I hope that it helps you.

Nick

The second is dated March 26, 2005. It provides,

Elena Petkova,

If you ask me there is no purpose to change your passwords… Unless you change them every hour it is totally useless.

I thought you might want to know…

Rest in peace!

Nick Karenev

Elena testified that Petkova was her maiden name and that she used it as well as Karenev and Kareneva. Appellant testified that he had emailed her about the passwords because she had called him and asked if she needed to change her password. He told her that she did not, and she asked him to put it in writing, so he sent the email. He testified that until March 15, they communicated regularly by email. He also testified that she asked him questions about the computer system at her office because he had been the administrator and had set up the system.

Helstrom translated the final line as "Rest in peace." She testified that it was meant as irony. Gilbard, though, testified that the phrase in Bulgarian

8

was "Haide ostani si s zdrave" and that in Bulgarian, "zdrave" means "health." Literally translated, the phrase means "remain in good health."[9] She testified that the phrase did not mean "rest in peace."

The remaining three emails appear to be dated March 26, March 28, and March 29, 2005. They are longer and appear to reveal anger. In those emails, Appellant predicted Elena's future: he would raise their child, her mother would be paralyzed, and Elena would be either in the "med house" or jail. He called her "not just a whore . . . something much scarier," a pathological liar, a dirty scum, a thief, a sick nymphomaniac, and a creature of the devil. He told her, "It is time to pay for all of the filthiness which you have caused during your pathetic life."

At trial, Appellant explained that while in Bulgaria he had run into fortune tellers upon whom Elena had relied and that they had asked him to relay the message regarding her future. He testified that in the email he was doing as they had requested.

Appellant and Elena were in the midst of divorce proceedings when the subject emails were sent. The emails regarded the divorce, and, at least on occasion, were responses to emails sent by Elena. In the emails, Appellant

---

[9] *See* Bulgarian-English, English-Bulgarian Dictionary 49, 98, 131, 134 (Hippocrene Books ed. 2006).

urged her to reach an agreement in their divorce to prevent their entire estate from going to the attorneys.

Applying the appropriate standard of review, we hold that the evidence sufficiently demonstrates at a minimum Appellant's intent to annoy Elena when he sent the emails. The jury, as trier of fact, was the sole judge of the credibility of Appellant's explanation that he was just trying to be helpful, and was therefore free to reject any or all of his explanation.[10] We overrule Appellant's third point.

### Constitutionality of Penal Code Section 42.07(a)(7)

In his second point, Appellant argues that section 42.07(a)(7) of the Texas Penal Code is unconstitutionally vague and offends the First Amendment protection of speech. On original submission, we interpreted this complaint as a facial challenge to the statute's constitutionality and held that the statute was void for vagueness.[11] On the State's petition for discretionary review, however, the Texas Court of Criminal Appeals overruled existing precedent and held that

---

[10] *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).

[11] *Karenev v. State*, 258 S.W.3d 210, 218 (Tex. App.—Fort Worth 2008) *(Karenev I)*, *rev'd*, *Karenev II*, 281 S.W.3d at 434.

a defendant must now challenge the facial constitutionality of the statute in the trial court and cannot raise the issue of the void statute for the first time on appeal.[12]  Because Appellant failed to challenge the constitutionality of the statute in the trial court, the Texas Court of Criminal Appeals held that Appellant had forfeited the complaint.[13]

In her concurrence, Judge Cochran posited that Appellant's second point is actually "an underground attack upon the sufficiency of the evidence . . . to prove that [he] sent 'repeated' harassing emails."[14]  In the interest of justice, we note that the evidence before the jury included three emails that appear to reveal anger.  In those emails, Appellant predicted a bad future for Elena and called her names.

The statute as written requires only that a defendant send more than one annoying email.  Elena was annoyed, and the jury could infer that annoying her was Appellant's intent.  Accordingly, the evidence was sufficient to show that he sent Elena repeated harassing emails.  We overrule Appellant's second point to the extent that it is a challenge to the sufficiency of the evidence.

---

[12] *Karenev II*, 281 S.W.3d at 434.

[13] *Id.*

[14] *Id.* at 441 (Cochran, J., concurring).

11

Jury Charge

In his first point, Appellant argues that the trial court erred in instructing the jury that it could convict on less than a finding of repeated emails. The jury charge provides in pertinent part,

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 15th day of November, 2004, through the 29th day of March, 2005, in the County of Denton of the State of Texas, [Appellant] did then and there with the intent to harass, annoy, alarm, abuse, torment, or embarrass Elena . . . , send electronic communications to [her] in a manner reasonably likely to harass or annoy or alarm or abuse or torment or embarrass or offend the said Elena . . . , to-wit: sending harassing and/or threatening e-mail to [her] with the intent to harass, annoy, alarm, abuse, torment or embarrass [her], then you will find [Appellant] guilty as charged in the Information in Count II.

Appellant argues that by using the word "email," the court allowed the jury to convict if they found that Appellant sent a single electronic communication. Additionally, as Appellant appears to implicitly point out, the application paragraph does not use the word "repeated." Because the necessary element "repeated" is not in the application paragraph, we agree that the jury charge is erroneous.[15]

---

[15] _See_ Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007); _Dinkins v. State_, 894 S.W.2d 330, 339 (Tex. Crim. App.), _cert. denied_, 516 U.S. 832 (1995); _Escobar v. State_, 28 S.W.3d 767, 779 (Tex. App.—Corpus Christi 2000, pet. ref'd); _Garro v. State_, Nos. 05-00-01539-CR, 05-00-01554-CR, 2002 WL 2005494, at *9 (Tex. App.—Dallas Aug. 20, 2002, pet. ref'd) (not designated for publication).

12

When there is error in the court's charge but the appellant did not preserve it at trial, we must decide whether the error was so egregious and created such harm that the appellant did not have a fair and impartial trial—in short, that "egregious harm" has occurred.[16] Egregious harm is the type and level of harm that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.[17]

In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."[18] The purpose of this review is to illuminate the actual, not just

[16] ... *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2007); *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

[17] ... *Allen*, 253 S.W.3d at 264 & n.15; *Almanza*, 686 S.W.2d at 172.

[18] ... *Almanza*, 686 S.W.2d at 171; *see generally Hutch*, 922 S.W.2d at 172–74.

theoretical, harm to the accused.[19]  Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis.[20]

The abstract portion of the jury charge correctly sets out the law.  It also defines the term "electronic communication" as

> a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelect[ro]nic, or photo-optical system. The term includes a communication initiated by electronic mail, instant message, network call, or facsimile machine.

The statute uses but does not define the term "repeated."  When the statute does not define a necessary term, we look to its common usage.[21]  The *Random House Webster's Unabridged Dictionary* defines repeated as "done, made, or said again and again."[22]  As we held above, the evidence sufficiently shows repeated emails.

Considering the jury charge as a whole, it is clear that the jury was instructed that they must find Appellant sent "electronic communications," that is, that he sent more than one electronic communication between November

---

[19]... *Almanza*, 686 S.W.2d at 174.

[20]... *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Hutch*, 922 S.W.2d at 171.

[21]... *Smith v. State*, No. AP-75479, 2009 WL 1212500, at *12 (Tex. Crim. App. May 6, 2009).

[22]... Random House Webster's Unabridged Dictionary 1633 (2d ed. 1998).

14

15, 2004, and March 29, 2005, and that the nature of the electronic communications was "email" as opposed to instant messages, network call, or facsimile. That is, the charge used "email" as the generic term to explain what kind of electronic communications the jury was required to find that Appellant sent to Elena before they could convict him. Accordingly, we hold that any error in the charge is harmless. We overrule Appellant's first point.

Conclusion

Having overruled Appellant's three points, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 24, 2009

15